UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**STEPHEN WAYNE WILLIAMS**                                **CIVIL ACTION**

**VERSUS**                                                **NO. 10-2309**

**TRAYLOR-MASSMAN-WEEKS, LLC, et al.**                    **SECTION: "C" (4)**


**ORDER and REASONS**[1]

Before the Court is a Motion for Summary Judgment, filed by Defendant Eustis Engineering Company, Inc. ("Eustis"). (Rec. Doc. 42). Plaintiff Stephen Wayne Williams ("Williams") opposes the motion. (Rec. Doc. 51). Having reviewed the memoranda of the parties, the record in the case, and the applicable law, the motion is GRANTED in part and DENIED in part for the following reasons.


**BACKGROUND**

Eustis entered into a contract with Shaw Environmental & Infrastructure, Inc. ("Shaw") to perform certain duties involved with the Inner Harbor Navigation Canal Project. (Rec. Doc.42-1 at 1). One of these duties included the monitoring of pile driving, which entailed recording the number of times a pile was struck and how far a pile was driven when struck. *Id*. Williams was employed by Eustis as a pile counter to perform this duty. *Id*. at 2. When the pile driver began striking the piles, Williams would stand on a forty-eight foot work platform (the "template") and document the blows. *Id*. As soon as the striking ended, Williams would walk from the template across a cat walk and down stairs to an adjacent barge, known as the 7000 Barge. *Id*. The 7000

---

[1] Greg Feeney, a second year student at Loyola University New Orleans College of Law, assisted in the preparation of this order.

Barge was a spud barge equipped with a 350 ton lift capacity ringer crane, used to pick up the hammer and leads to be utilized by the pile driver. *Id*. Also, there was a heated CONEX office space on the 7000 Barge, and Williams spent a majority of his time in this CONEX office waiting for the pile driving to commence. (Rec. Doc. 56-3 at 2). At the end of a shift on December 7, 2009, Williams fell as he was descending the staircase from the template to the barge. (Rec. Doc. 42-1 at 4). Williams originally filed suit against both Shaw and Traylor-Massman-Weeks LLC ("TMW") pursuant to the Longshore and Harbors Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, and general maritime law. (Rec. Doc. 1). Subsequently, Williams added Eustis as a defendant and brought an additional claim as a seaman pursuant to the Jones Act, 46 U.S.C. § 688. (Rec. Doc. 21). In response, Eustis claims they cannot be liable under the LHWCA or general maritime law because they did not own or operate any vessels involved with the matter. (Rec. Doc. 42-1 at 4). Further, Eustis claims that as a matter of law, Williams was not a seaman and cannot make a Jones Act claim. *Id*.

## LAW and ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences

most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

**B. LHWCA and General Maritime Law Claims**

The Court notes that Eustis did not own or operate any vessels involved with Williams' complaint. (Rec. Doc. 42-1 at 4). In general, 33 U.S.C. § 905(b) allows a plaintiff to make claims of negligence against a vessel owner. *Aguilar v. Bollinger Shipyards, Inc.*, 2011 WL 2457703 at *7 (E.D. La. Jun. 16, 2011). Also, under general maritime law, a plaintiff may make claims concerning the unseaworthiness of a vessel against the owner or operator of that vessel. *See Park v. Stockstill Boat Rentals Inc.*, 492 F.3d 600, 604 (5th Cir. 2007). It follows that Williams cannot show that he is entitled to relief from Eustis under the LHWCA or general maritime law because Eustis is not the owner or operator of a vessel. Thus, with respect to all claims Williams has made against Eustis

3

pursuant to the LHWCA and general maritime law, Eustis' Motion for Summary Judgment (Rec. Doc. 42) is GRANTED.

**C. Jones Act Claim**

A cause of action will not arise under the Jones Act unless the plaintiff is a "seaman." *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999). The determination of Jones Act seaman status is a mixed question of law and fact. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997). As such, seaman status is typically a matter for a jury to decide. *Id.* However, summary judgment "is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)).

To recover as a seaman under the Jones Act, Williams must demonstrate an employment related connection to a vessel or an identifiable group of vessels in navigation. *Chandris Inc. v. Lastis*, 515 U.S. 347, 368 (1995). Williams has a sufficient employment related connection to a vessel if he can show (1) that his duties contributed to the function of the vessel or the accomplishment of the vessel's mission and (2) that the connection to the vessel was substantial in both duration and nature. *Id.*

Eustis first argues that Williams' Jones Act claim fails because Williams cannot establish an employment related connection to a vessel. (Rec. Doc. 42-1 at 6). Eustis insists that both the template and the 7000 Barge are work platforms. *Id*. However, in light of the Supreme Court's broad definition of a vessel, this Court cannot agree with Eustis. *See Stewart v. Dutra Const. Co.*,

543 U.S. 481, 497 (2005) ("[A] vessel is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment.").[2]

The determinative question as to a craft's status is "the purpose for which the craft was constructed and the business in which it is engaged." *Cook v. Belden Concrete Prods., Inc.*, 472 F.2d 999, 1001 (5th Cir. 1973) (quoting *Perry v. Haines*, 191 U.S. 17, 30 (1903)). The Fifth Circuit, in *Brunet v. Boh Bros. Constr. Co., Inc.*, held that although a barge was used more often to support a crane than to transport the crane, that barge was a vessel for Jones Act purposes. 715 F.2d 196, 197-198 (5th Cir. 1983). The *Brunet* barge "by necessity [was] designed to transport a pile-driving crane across navigable waters." *Id.* at 198. Similar to the *Brunet* barge, the 7000 Barge was clearly constructed for transporting its crane to work sites that are unaccessible by land. In this case, a tug boat would tow the 7000 Barge into position to assist with each day's pile driving work. (Rec. Doc. 42-1 at 3). Additionally, as Williams points out, the 7000 Barge is currently assisting with another project on the Mississippi River. (Rec. Doc. 51 at 5). Thus, this Court holds that for purposes of Jones Act claims, the 7000 Barge is considered a vessel.[3]

Next Eustis argues that Williams was neither connected with the 7000 Barge nor contributed to the accomplishment of the 7000 Barge's mission. (Rec. Doc. 42-1 at 9). "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman." *Chandris*, 515 U.S. at 371. The general rule is that "a

---

[2] The Supreme Court's definition of vessel in *Stewart* refers to the Jones Act and the LHWCA interchangeably. *Holmes v. Atl. Sounding Co., Inc.*, 437 F.3d 441, 447 (5th Cir. 2006).

[3] Because the Court has determined that the 7000 Barge is a vessel for purposes of the Jones Act, there is no need for the Court to determine the status of the template.

worker who spends less then about thirty percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.*

Although Williams testified that he did not assist with the movement, maintenance or navigation of the barge, (Rec. Doc. 42-1 at 7-8), he did assist in the overall mission of the barge. (Rec. Doc. 51 at 3-4). The overall mission of the 7000 Barge was to assist with the construction of the flood-wall, and Williams contributed to this mission with his work as a pile counter. *Id*. Further, during the performance of this work, Williams was required to move from the template to the 7000 Barge throughout his workday. In doing so, Williams faced the perils of ingress and egress to and from a vessel, and the Court holds this is sufficient to establish a connection to a vessel that is substantial in nature. Also, because Williams spent seventy-five percent of his day aboard the 7000 Barge in the CONEX office, (Rec. Doc. 56-3 at 2), he is able to satisfy the thirty percent rule to show a connection substantial in duration. *See Chandris*, 515 U.S. at 371. Thus, Williams did have a connection to a vessel and also contributed to the overall mission of that vessel. The Court is unable to conclude as a matter of law that Williams was not a seaman for purposes of the Jones Act.

Finally, a Jones Act employer must supply a reasonably safe ingress and egress for its crew members to and from its vessel. *Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675, 679 (5th Cir. 1969). Also, the Court notes that "a seaman's Jones Act employer need not be the owner of the vessel or vessels of which the seaman is a member of the crew." *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 433 (5th Cir. 1984). As mentioned above, Williams often had to walk from the template onto the 7000 Barge, and the Court has found that an issue exists as to whether Williams was afforded a reasonably safe manner of doing so. (Rec. Doc. 122). Although Eustis did not own or

operate any vessel, they still may be liable to Williams if any negligence on the part of Eustis contributed to Williams' injuries. *See Wallace*, 727 F.2d at 433. Thus, with respect to Williams' Jones Act claim, Eustis' Motion for Summary judgment (Rec. Doc. 42) is DENIED.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment (Rec. Doc. 42) is GRANTED in part and DENIED in part.

New Orleans, Louisiana, this 10th day of August, 2011.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**