UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEPHEN WAYNE WILLIAMS                        CIVIL ACTION

VERSUS                                        NO:    10-2309

TRAYLOR-MASSMAN-WEEKS, LLC, ET AL             SECTION: "C" (4)

**ORDER & REASONS**

Before the Court are (1) the Motion for Summary Judgment filed by Third Party Defendant ACE American Insurance Company ("ACE") against Defendant and Third Party Plaintiff Eustis Engineering Company of Mississippi ("Eustis") (Rec. Doc. 168); and (2) the Motion to Sever Third Party Complaint of [Eustis], against [ACE]. (Rec. Doc. 169). Based on the record, memoranda of counsel, and the law, the Court GRANTS the Motion for Summary Judgment and DISMISSES AS MOOT the Motion to Sever for the following reasons.

**BACKGROUND**

Eustis's Third Party insurance claim against ACE arises out of a work-related personal injury claim against Traylor-Massman-Weeks ("TMW"), Shaw Environmental & Infrastructure, Inc. ("Shaw"), and Eustis by Stephen Williams, a Eustis employee. (Rec. Doc. 118). The United States Corps of Engineers hired Shaw to build hurricane-related structures in the Inner Harbor Navigation Channel ("INHC"). In July 2008, Shaw hired Eustis as a subcontractor to perform work in the IHNC Project ("Work Agreement"). (Rec. Doc. 118-1). ACE was not a party to the Work Agreement. At some point after the Work Agreement was made, Shaw made available to its

1

subcontractors an integrated insurance program referred to as the Contractor Controlled Insurance Program ("CCIP"), at which time ACE entered the scene as Shaw's insurer.[1]  Eustis now seeks a judgment from this Court requiring ACE to provide insurance and workers' compensation coverage to Eustis for Williams's claims against Eustis and related defense of those claims.  The sole issue before the Court is whether Eustis was covered under the CCIP.

In its Motion, ACE argues that Eustis was not covered by the CCIP because the program covers only those enrolled in it, and Eustis admitted that it failed to enroll.  It is undisputed that the Work Agreement required consultants like Eustis to participate in the CCIP and that the CCIP was not available as of the effective date of the Work Agreement:

> Project Wrap Up Insurance (CIP Program) is not available as of this Agreement's effective date.  It is anticipated that the work performed on the UNHC project will ultimately be covered by a CIP Program which will provide coverage for Workers Compensation, General Liability and Excess/Umbrella Liability.  Consultant will be required to participate in the CIP Program upon activation of the Program.

(Rec. Doc. 118-1 at 3).

It is also undisputed that an insured is defined in the following way under the ACE policy:

> 1. The following are insureds:
>    a. The "Named Insured", but solely with respect to liability resulting from (i) action or failure to act of the contractors and subcontractors (hereinafter "Enrolled Contractors") that perform work at the "Designated Project(s)" and that we enroll in accordance with our records as participants in the "Controlled Insurance Program; or (ii) the "Named Insured's" action or failure to act while performing duties within the scope of the "Designated Project(s)."
>    b. Any "Enrolled Contractor" for whom the "Named Insured" contracts to furnish insurance under the "Controlled Insurance Program" and who performs work at the "Designated Project(s)."

(Rec. Doc. 118-2 at 48).

ACE alleges that according to the CCIP Contractor Insurance Manual ("CCIP Manual"), that is, the insurance agreement between Shaw and ACE, an "insured" under the CCIP is defined as:

---

[1] Willis of Pennsylvania, Inc. ("Willis") brokered insurance policies from ACE.

> The Shaw Group Inc., its affiliates, and Shaw Environmental & Infrastructure hereinafter called "the Sponsor", and Shaw Environmental & Infrastructure's Subcontractors of any tier *who are enrolled* in the CCIP and who have been named in a policy, certificate of insurance, or advice of insruance signed by a duly authorized representative of insurers.

(Rec. Doc. 118-3 at 8) (emphasis added). ACE alleges that the Manual again specifies that the CCIP covers only those subcontractors that enroll in the program: "The CCIP will be for the benefit of the Sponsor and <u>enrolled</u> Contractors/Subcontractors of all tiers...." (Rec. Doc. 168-1 at 7; Rec. Doc. 118-3 at 13) (emphasis in original).

Furthermore, ACE alleges that participation in the CCIP was not mandatory, as the CCIP Manual states that "PARTICIPATION IN THE CCIP IS RECOMMENDED BUT NOT AUTOMATIC." (Rec. Doc. 168-1 at 6; Rec. Doc. 118-3 at 10). The CCIP Manual also states that the program is "optional." (Rec. Doc. 118-3 at 23). ACE alleges that, according to the Manual, to participate in the program, subcontractors must (1) complete an "Insurance Cost Identification Worksheet (Form 2)" ("Form 2"); and (2) receive a CCIP Certificate of Insurance by the CCIP Administrator, which constitutes proof that the subcontractor is enrolled and entitled to coverage under the ACE policies. (Rec. Doc. 168-1 at 7; Rec. Doc. 118-3 at 21).

Eustis admits that it failed to complete these steps. In particular, it did not complete Form 2: "...it is admitted that Eustis did not complete [Form 2]." (Response to Request for Admission No. 4, Rec. Doc. 197-1 at 10). Further, Eustis did not provide a completed Form 2 to Shaw: "...it is admitted that Eustis did not provide [Form 2] to Shaw." (Response to Request for Production No. 3, Rec. Doc. 197-1 at 13). Nor did Eustis receive a certificate of insurance: "... it is admitted that neither Shaw nor ACE provided Eustis with any certificates of insurance." (Response to Request for Admission No. 14, Rec. Doc. 197-1 at 16). Moreover, Eustis admitted that "Shaw did not deduct from the invoices of Eustis" and "Eustis did not directly pay any premium related to the CCIP to Shaw or ACE." (Response to Request for Admission Nos. 18, 19, 20, 21, Rec. Doc. 197-1 at 20, 22-23). Eustis also admitted in its Opposition that it "took no action, other than signing the [Work

Agreement], to enroll in the CCIP...." (Rec. Doc. 180 at 6).

In its Opposition, Eustis agrees that it was not a "Named Insured" under the "CCIP. (Rec. Doc. 180 at 7). Instead, it argues that it is an "Additional Insured," or at least that there is a genuine issue of material fact as to Eustis's insured status.[2] In support, Eustis points to the terms of the Work Agreement, which requires the participation of Eustis in the CCIP. (Rec. Doc. 180 at 9). Eustis also points to an email where Shaw informed Eustis that it had put ACE on notice of a potential personal injury claim against Eustis, and which, according to Eustis, suggests that Shaw believed or may have believed that Eustis was covered by the CCIP. (Rec. Doc. 180-1 at 9). In addition, to show that there are fact questions surrounding Eustis's insured status, Eustis points to billing records of counsel for Shaw showing that Shaw investigated whether Eustis was covered by the CCIP even before Williams filed his personal injury suit against Eustis, which also suggests that Shaw believed Eustis was covered by the CCIP.

Eustis also argues that summary judgment is improper because there are fact issues surrounding whether Shaw was Ace's agent. According to Eustis, if an agency relationship existed, then ACE was obligated to provide the enrollment documents to Eustis and otherwise ensure that Eustis was covered by the CCIP.

---

[2]Eustis also argues that ACE's Motion should be denied because ACE failed to attach documents that, according to ACE, demonstrate no genuine issue of material fact and to which ACE cites in its Motion. Those documents are the Work Agreement between Eustis and Shaw (Rec. Doc. 118-1), the ACE Policy (Rec. Doc. 118-2), and the CCIP Manual (Rec. Doc. 118-3). Eustis's argument is without merit. As Eustis itself states, it is well-settled that when deciding whether to grant a motion for summary judgment, the court may look to the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Federal Rule of Civil Procedure 56(c)). The documents at issue are attached to Eustis's Third Party Complaint. (Rec. Doc. 118). Eustis argues that when ACE denied, in its Answer, allegations by Eustis that specifically referenced the those documents, ACE "essentially denied the existence of those documents." (Rec. Doc. 180 at 7). Eustis provides no authority for this argument or the argument that ACE's Motion is unsubstantiated simply because the documents, which are in the record, are not attached to the Motion itself.

4

Finally, Eustis argues that it was Shaw's, not Eustis's, duty to activate coverage under the CCIP, and thus that Eustis's failure to do so is irrelevant. To the extent that this argument is separate from the agency argument, the Court disregards it as it in no way implicates ACE.

## **LAW & ANALYSIS**

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1996). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on unsubstantiated assertions and conclusory allegations. *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994).

The Court finds that there is no genuine issue of material fact for the jury in this case, and that ACE is entitled to summary judgment, because Eustis is not covered under the General Liability Policy issued by ACE in connection with the CCIP.

First, the Court finds that no genuine issue of material fact exists regarding whether Eustis was an insured under the CCIP. Eustis admits that it did not complete the steps required under the CCIP Manual for enrolling in the program. Furthermore, Eustis claims to be an "Additional Insured" under the CCIP but does not cite to any portion of the policy defining the term "Additional Insured" or discussing the rights and obligations of such an entity, and the Court has found none. The only types of insureds described in the policy are the "Named Insured," which Eustis admits it is not, and "Any 'Enrolled Contractor' for whom the 'Named Insured' contracts to furnish insurance under the "Controlled Insurance Program' and who performs work at the 'Designated Project(s).'" (Rec. Doc. 118-2 at 48). Assuming that "Additional Insured" is Eustis's shorthand for this second category of insureds, Eustis's claim that it falls under that category is without merit. The title of such an insured contains the word "Enrolled," and Eustis admits that it completed none of the steps required to enroll and that the record is devoid of any evidence that it ever enrolled. Additionally, it is immaterial whether Shaw believed or may have believed that Eustis was covered, as this belief does nothing to change the likelihood, by a preponderance of the evidence, that Eustis was in fact not covered. Finally, it is also immaterial that the Work Agreement required Eustis to be covered by the CCIP, since ACE was not a party to the Work Agreement. Thus, Eustis's contention that there is an issue of fact for the jury regarding Eustis's "insured status" is unpersuasive.

Second the Court finds that whether or not Shaw and ACE had an agency relationship is immaterial, because even if they did, this would not change the fact that Eustis failed to enroll in the program and thus was not covered under the CCIP. Eustis attempts to argue that it somehow was covered under the CCIP because, as Shaw's principal, ACE had an obligation to provide Eustis with the forms required for enrollment in the program. This argument is unpersuasive as no evidence has been presented that Shaw and ACE had an agency relationship that bound ACE to actions taken and

6

contracts entered into by Shaw. The Work Agreement Eustis entered into with Shaw in July 2008 "required [Eustis] to participate in the CCI Program upon activation of the program." (Rec. Doc. 118-1 at 3). Again, ACE was not a party to the Work Agreement. Thus, if the Work Agreement required Shaw to provide the necessary forms for Eustis to enroll in the CCIP, and if Shaw indeed failed to do so, two facts which the Court does not decide, then only Shaw is liable to Eustis for breach of the Work Agreement. Furthermore, the parties agree that the work Agreement between Eustis and Shaw was confected before ACE issued its general liability policy to Shaw. (Rec. Doc. 118 at ¶ 6; Rec. Doc. 197 at 7). No evidence shows that ACE had a relationship with Shaw prior to entering into the CCIP agreement. Even if CCIP agreement created an agency relationship between ACE and Shaw, there is no evidence or legal authority showing that this agency relationship would retroactively bind ACE to contracts that Eustis entered into in the past, such as the Work Agreement.

Moreover, the Court is unpersuaded that ACE was bound to the terms of the Work Agreement or that Shaw was ACE's insurance agent via an apparent authority theory of agency. An entity that "causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary." La. C.C.P. art. 3021. The party seeking to show that an apparent agency relationship exists has the burden of proving the relationship. *Walton Constr. Co., L.L.C. v. G.M. Horne & Co., Inc.*, 984 So. 2d 827, 836-837 (La. App. 4 Cir. 2008). To find that apparent authority exists, the "principal must first act to manifest the alleged agent's authority to an innocent third party;" and the "third party must rely reasonably on the manifested authority of the agent." *Hoffman, et al. v. Lee*, 936 So. 2d 853, 860 (citing *Boulos v. Morrison*, 503 So. 2d 1, 3 (La. 1987). No evidence in the record shows that ACE performed any act causing Eustis to believe that Shaw was ACE's insurance agent for the CCIP.

Nor is the Court convinced that ACE was bound to the Work Agreement via an undisclosed

7

principal theory. Generally, an agent is bound to a contract that he entered into without disclosing the identity of his principal, and the undisclosed principal is not bound. *See Irrigation Mart, Inc. v. Gray*, 42, 44 (La. App. 2 Cir. 2007). In this case, ACE is not identified anywhere in the Work Agreement. Therefore, even if Shaw was ACE's agent, which the Court does not decide, only Shaw would be liable.

Accordingly,

IT IS ORDERED that ACE American Insurance Company's Motion for Summary Judgment is GRANTED. (Rec. Doc. 168).

IT IS FURTHER ORDERED that Eustis Engineering Company, Inc. of Mississippi's Motion to Sever is DISMISSED AS MOOT. (Rec. Doc. 169).

New Orleans, Louisiana, this 2nd day of April, 2012.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**